# Kistler *v.* Susquehanna, Bloomsburg & Berwick Railroad Company, Appellant.

*Negligence—Railroads—" Stop, look and listen "—Contributory negligence.*

In an action against a railroad company to recover damages for injuries sustained at a grade crossing, the evidence as to whether a whistle was sounded or a bell rung as a train approached the crossing, was conflicting. The plaintiff testified that he was driving a team at the time, and that he stopped about fourteen or fifteen feet from the crossing with the nearest horse a few feet from the rail. He looked and listened and, seeing and hearing nothing, started on with his horses at a walk. A train struck the back end of the wagon. He also testified that he had a view along the track for about 100 feet from where he stopped. Upon cross-examination he stated that the horses started on "a smart walk," that the horses were on the track when he first heard

the train, and that he urged them on all he could without whipping them, as he had no whip. It also appeared that there was a curve in the direction from which the train came, and plaintiff stated that even if he had got out of his wagon and gone on the track, he could not have seen much further than he did from the point where he stopped. The trial resulted in a verdict and judgment for the plaintiff. On appeal the six judges who heard the case were equally divided, and the judgment was affirmed.

Argued March 1, 1909. Appeal, No. 73, March T., 1909, by defendant, from judgment of C. P. Columbia Co., Dec. T., 1907, No 92, on verdict for plaintiff in case of Freas C. Kistler v. The Susquehanna, Bloomsburg & Berwick Railroad Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Evans, P. J.

The trial resulted in a verdict and judgment for plaintiff for $1,300.

On a motion for defendant non obstante veredicto, Evans, P. J., filed the following opinion:

An accident occurred to the plaintiff at the grade crossing where the defendant's railroad crosses the public road near Shaffer's bridge in this county on March 9, 1907, at about ten o'clock in the forenoon. The crossing where the accident occurred is a very dangerous one and is known as the Canby crossing.

The plaintiff contends that the accident was occasioned through the negligence of the defendant company. The particular negligence of which the plaintiff complains is, that the train which caused the injury approached the crossing without giving any signal or warning by ringing the bell or sounding the whistle.

The question as to whether the train approached the crossing without giving signal by ringing the bell or sounding the whistle and the plaintiff's contributory negligence were submitted to the jury. In each instance the jury found against the defendant.

This motion comes before the court because of our refusal to

charge the jury that from the undisputed evidence the plaintiff was guilty of contributory negligence and therefore could not recover. That the plaintiff was guilty of contributory negligence in failing to stop, look and listen before undertaking to cross the tracks of the defendant company at a place where he had a view of the tracks which would have enabled him to have seen or heard the approaching train.

It was conceded upon the argument of this motion that if the evidence entitled the plaintiff to recover that the verdict was a very reasonable one in view of the injuries sustained.

The plaintiff and several of his witnesses testified that the whistle was not sounded or the bell rung as the train approached the crossing.

The defendant's witnesses testified that the whistle was sounded and the bell rung as the train approached the crossing. As to whether signal was given as the train approached the crossing was therefore a question for the jury to determine from the testimony. The testimony could not have been more contradictory upon that point.

In order to justify the court in treating the question of contributory negligence as one of law, not only the facts but the inferences to be drawn from them must be free of doubt. If there is doubt as to either the case must go to the jury: Beach v. Penna. R. R. Co., 212 Pa. 567; Carroll v. Penna. R. R. Co., 12 W. N. C. 348; Muckinhaupt v. Erie Railroad Co., 196 Pa. 213.

The whole duty of one about to cross the tracks of a steam road at grade is not in all cases confined to his stopping, looking and listening for the approach of a train. He must stop at a proper place, and when he proceeds he should continue to look and to observe the precautions which the danger of the situation requires. He should stop again if there is another place nearer the tracks from which he can better discern whether there is danger. But whether the place at which he stopped was the proper place at which to stop and whether there is a second place at which he should stop, are questions of fact for the jury, and not matters of law for the court: Muckinhaupt v. Erie Railroad Co., 196 Pa. 213; Cookson v. Pittsburg, etc., Ry.

Co., 179 Pa. 184. In the latter case the court used the following language: "The usual and customary place of stopping by people using a road cannot be said as a matter of law to be an improper or negligent place. The standard of negligence is what persons of ordinary prudence and carefulness would do under the same circumstances, and a general habit of the public to stop at a certain place, is persuasive evidence that that place is the right one. The further the stopping place is from the track the greater will be the chance of an intervening peril before actual crossing. The duty of the traveler is therefore not only to keep a vigilant and continuous lookout, but to stop if a second place affords any increased facility to discover impending danger, but whether there is any such second place is a question of fact which is for the jury if at all in doubt."

The plaintiff testified as follows: "Q. As you came along the Canby road and approached the Susquehanna, Bloomsburg & Berwick Railroad crossing, what did you do? A. Stopped. Q. About how close to the crossing? A. Well, I suppose in the neighborhood of fourteen or fifteen feet. Q. About how far was the nearest horse to the rail? A. Well, within a few feet as near as I could tell you. Q. And you were sitting, of course, on the right hand of the wagon? A. Yes, sir, on the driver's side. Q. What else did you do besides stop? A. Looked and listened. Q. What did you see in the way of an approaching train? A. Didn't see anything. Q. What did you hear? A. Nothing at all. Q. After seeing or hearing nothing what did you do? A. Drove on. Q. At what sort of a gait did you drive after your stopping and looking? A. Started on a walk as fast as an ordinary team would walk. Q. And what happened to you when you were on the crossing? A. Struck by a train, by the engine. Q. What part of the wagon was struck? A. The hind end. Q. Can you tell me about how much of a view along the track westward you had when you stopped? A. I never measured; I would judge in the neighborhood of 100 feet, something like that. Q. Well, what was the effect of the striking of the wagon by the engine upon you? A. Knocked me over the side upon the ground. Q. Now I believe you said you heard nothing when you listened; what did you

hear as to the sounding of a whistle or ringing of a bell? A. Didn't hear any. Q. Now, coming down the grade that approached the Canby crossing from the north, you say you stopped when your horses were a few feet from the track; what other place was there, if any, where you could have gotten any better view of the track? A. There was not any. Q. Well, you could have gotten a better view standing out in the middle of the track? A. Do you mean by getting out of the wagon? Q. Yes, sir. You didn't get out, did you? A. No, sir. Q. After you started up your team you were struck before the wagon had cleared the track? A. Yes, sir. Q. At about what gait was your team moving? A. They started on a strong walk."

And upon cross-examination the plaintiff testified as follows: "Q. After you stopped, looked and listened, as you say, the horses started on what you call a 'smart walk'? A. A strong walk, yes, sir. Q. You were struck immediately after entering upon the track by the train? A. Yes, sir. Q. The locomotive hit your wagon about the middle of it? A. Yes, sir, somewhere I suppose. I could not tell exactly, but it struck the lock bar and the hind truck. Q. It was evidently then hit about the middle of the wagon? A. Yes, sir, a little back of the middle. Q. The horses had crossed? A. Yes, sir. Q. Did you stop talking when you stopped your horses? A. Yes, sir. Q. You were listening for a train? A. Why, certainly, yes, sir. Q. Knew that a train was likely to come along there at that point? A. Yes, sir. I didn't know the exact time of the train. I was always on the lookout for a train, because I was always afraid of that place. Q. Have you ever made any observation there from the track, out there standing on the track between the rails, how far you could see to the westward? A. I don't exactly know how far you can see. Q. You know you can see a great deal farther from the point you were sitting in the wagon. A. I don't think I could see a great deal further, a very little further, because it is winding right around a hill. Q. Where were you when you first saw the train approaching you, on the track? A. The team were on the track. Q. You were just coming on the track when you first heard the train approach-

260 KISTLER v. SUSQUEHANNA, ETC., R. R., Appellant.

Opinion of Court below—Opinion of the Court. [39 Pa. Superior Ct.

ing? A. Yes, sir. Q. The horses were not on the track? A. Yes, sir; we were about coming on it with the wagon. Q. Did you whip the horses to get them across? A. No, sir. Q. What did you do? A. Urged them all we could; the best we could. Q. Had you a whip? A. No, sir. Q. Did you slap them with the lines? A. Yes, sir. Q. Did you call them to ——? A. Yes, sir, we both hollered at them, like anyone else to get up. Q. And whipped them with the lines? A. Yes, sir."

The plaintiff's testimony must be considered as a whole. The rule is, that where the net result of the plaintiff's testimony is not clear, on part of it being clearly entitled to go to the jury, and on the other part equally clear not entitled to, the case upon the whole must go to the jury: Ely v. Pittsburg, Cincinnati, Chicago & St. Louis Railway Co., 158 Pa. 233; Glase v. Philadelphia, 169 Pa. 488.

Upon the trial we were not satisfied that there was conclusive evidence of the plaintiff's negligence. We therefore submitted the question of the plaintiff's contributory negligence to the jury.

From further and more considerate examination of the question we believe that our submission of the question of the plaintiff's contributory negligence was right. That there was no such testimony as would have justified us in saying to the jury that the plaintiff was guilty of contributory negligence and therefore cannot recover.

And now, January 18, 1909, motion denied.

*Error assigned* was in overruling defendant's motion for judgment non obstante veredicto.

*Grant Herring*, with him *Seth T. McCormick, S. P. Wolverton* and *S. P. Wolverton, Jr.*, for appellant.

*Fred Ikler*, with him *Clinton Herring*, for appellee.

PER CURIAM, April 19, 1909:

The six judges who heard this case being equally divided in opinion, the judgment is affirmed.